Will the clerk please call the next case. Counsel, you may proceed. Good morning, and may it please the court. My name is Mallory Zimmett, and I represent A.C. McCartney Farm Equipment. I ask that this court today affirm the commission's finding that David Fink suffered permanent partial disability to the extent of 50% loss of use of the person as a whole. I'd first like to address the standard of review in this case. This is an issue of permanency, which is an issue of fact, to be resolved by the commission, and its decision will only be overturned if it is against the manifest weight of the evidence. The test is whether there is actual sufficient evidence in the record to support the commission's finding, not whether this court would come to the opposite conclusion. So I'd like to turn to their decision, which is a loss of trade of 50%, and find the actual evidence in the record that supports their finding. Could you tell me, for one moment, where in your brief we would find their decision? Do you mean attached to the? Yeah. Is it an appendix? No, it's not in there. Well, it's required by the Supreme Court rule that you have both the arbitrator's decision attached, the commission's decision attached, and a table of contents of the record on appeal. And I noticed that it was the appellee that had to supply all that to us, because it's not attached to your brief. I'm sorry about that. Well, I mean, if you're going to write these briefs, you've got to follow the rules. Okay. Go ahead. Thank you. I will note that in the future. So turning to the. . . The opposing counsel could just file a motion to strike your brief. Thank you for providing that. The opposing counsel provided it all. Pardon? The opposing counsel provided it all. That's what I said. Thank you for providing it. The opposing counsel could have chosen to strike the brief for failure to comply. I appreciate that. You should thank the opposing counsel. Thank you. Go ahead. So turning to the decision of 50% of the person, the commission first made the finding that Mr. Fink cannot return to work as a setup mechanic, and I would say that that is supported by the record, and we're not disputing that today. That's not against the manifest way to the evidence. Their second finding was that there was insufficient evidence to prove a loss of earnings as a result of this accident, and in finding that, they found that Lisa Helmer's vocational assessment was not persuasive, and that's really the issue that this turns on. Let me see if I can hone in on what I think is a critical issue, however. The commission found the claimant failed to prove that he fell into the ad-lib category by showing that he conducted a diligent but unsuccessful job service. I don't know that that's disputed by anybody here. However, what they seem to be arguing that has some appeal, it would appear, is that they're disputing the finding that he failed to prove he fell into the ad-lib category by demonstrating there were no available jobs for a person of his age, training, educational, and work history. Who is Helmer is the rehabilitation specialist. Who's Helmer? She was a hired vocational expert by Mr. Fink's counsel to perform a one-time telephone call with Mr. Fink and then render a report in anticipation of litigation to find that he's permanently and totally disabled. Did she represent or opine that there were no available jobs for a person in this circumstance? Yes, that's what her report. Did anybody dispute that? The commission found that her report was not persuasive and her conclusions weren't persuasive. Based on what factors? So based on the body of her report, for example, she never met with Mr. Fink, so she couldn't comment on his presentation or any pain behaviors. What the commission really honed in on was that she finds that unskilled sedentary jobs make up 1% of the labor market, and yet she doesn't address that at all in her conclusions. So the commission is left wondering, what are these 1% of jobs? Are they cashier positions, telemarketing? Why can't he access that 1% of the labor market? Was there any evidence on the other side disputing that there were available jobs for a person of his age, training, and education? They seem to be arguing you've got his testimony, you've got Helmer's report, and there's nothing on the other side. You're right. Respondents did not introduce their own vocational assessment. So where's the manifest? Where's the evidence on that issue? Well, as the Court stated in the Sherlocko case, the Respondent is not required to produce evidence of disability. Well, that may be true, but if there's testimony that's unrebutted or evidence unrebutted, doesn't that enter into consideration? It's still subject to determinations of – and just to be clear, it is evidence. She didn't testify, so she's not a witness. It's still subject to determinations of fact by the Commission, whether the evidence is credible, whether her conclusions are supported by the evidence, and they found that it wasn't. It's still subject to weighing the evidence, just like any other evidence. It's an issue of credibility, which is an issue of fact, that I submit is best left up to the determination of the Commission. Well, do you have any – what evidence is there to counterfeit that you can cite to us? Was there evidence that there are available jobs for a person? I mean, how does the evidence line up on that issue? Yes. Like the Commission stated, there's 1 percent of the labor market which is available for unskilled sedentary workers. And so the Commission questioned why Mr. Fink couldn't access that 1 percent of the labor market. She just comes to this conclusion that he's permanently and totally disabled, that there's no stable labor market. And they weren't satisfied with the steps that she took to come to that conclusion. She also states in her report that testing is required to determine if he can obtain his GED. And as we know, having a GED would open up more of a labor market to him. So in the beginning of her report, she recommends this testing, but then at the end of her report, she just skips to the conclusion that there's no stable labor market. So what happened to that testing? Why didn't she come up with concrete steps to get him back to work? Why was that plan completely disregarded? To go along with that, Mr. Fink abandoned the job market by the time she rendered this report. There's no vocational goals addressed, no objectives of his. It's just a report prepared in anticipation of litigation without showing a motive to go back to work. He was already on Social Security Disability at this time. She also addresses that he has mechanical, carpentry, and electrical skills when she's interviewing him, but then doesn't address any of that in her transferable skills analysis. So once again, we're left wondering, you know, are there any jobs that he could do with those skills? We don't know. She never addressed that. And these were all inconsistencies that this Court can point to to support the Commission's determination that her report was not credible. Kennedy. Did the Commission ever express any opinions on the claimant's credibility? Did they ever say he lacked credibility? No, the Commission didn't say that. Did they ever say that Helmer's opinions were based on any misinformation or incorrect information? No. Okay. No. What they're concerned about is how she arrived at her conclusion and the fact that that was not persuasive. I mean, Mr. Fink, he has restrictions on his ability to stand and lifting approximately 10 to 15 pounds. This isn't someone who's confined to a wheelchair. He can sit. In fact, we accommodated temporary light duty, I will concede that, for about three months when he could drive a truck and file papers. She never addressed why he couldn't do those jobs or why driving jobs and filing paper jobs aren't available in his area. He has a commercial driver's license. That was never addressed by her. Well, she addresses it, but then never comments on why that wouldn't create more of a labor market for him. So it's all of these inconsistencies that the Commission determined this was just a report prepared for anticipation of litigation. We're not persuaded by it. She didn't perform a sufficient fact-based analysis to determine that there's no stable labor market. And we're not going to uphold the arbitrator's determination because of all of these inconsistencies. So it falls under the category, and you've been candid and open and honest enough to admit that there was no findings of lack of credibility of the claimants, nothing inherently flawed in Hellman's report. It came down to what you candidly said, they were not persuaded by the report and by the claimant's testimony. Well, there's no misrepresentations of fact in her report, but I would say that her conclusions are inherently flawed. And why is it flawed? Because of all of these analyses that she skipped. The fact that she didn't address this 1 percent of the labor market that's available for unskilled sedentary work. The fact that she disregarded his carpentry skills, mechanical skills, electrical skills, commercial driver's license, his work he's done filing papers. Is that something you pointed out in the argument before the Commission, or was that just something the Commission decided on its own? This was something that the Commission decided on its own. There was no contrary evidence to that? I'm sorry, as to his... Where did this 1 percent come from? Oh, that's in her report. If you read her report, she says that unskilled sedentary work makes up 1 percent of the labor market. And then if you read the Commission's decision, they really honed in on that to wonder why he can't access those jobs. Because it sounds like there's jobs available, and she identifies that there's jobs available, and yet just skips to this conclusion that there's no jobs available. So for those reasons, you believe the Commission's decision was not against the manifesto? It was not against the manifesto or the evidence. There's sufficient facts to support the Commission's decision. And for that reason, I would ask that this court affirm. Thank you. Thank you, Counsel. We have time to reply. Thank you. Counsel, you may respond. Thank you. Good morning, Your Honors. I'm Amy Lee Hogan Simonovich here today on behalf of the claimant, Mr. Fink, Counsel. I think that it is important to recognize in this case that the Commission's factual determinations used an improper legal standard. It's one thing for the Commission to state this is what the legal standard is. They didn't actually apply it. They didn't actually weigh the factors of age, education, training, skills, experience, and condition. They looked at three things in discounting the evidence in this case provided by the expert rehabilitation counselor. They looked at whether the interview was in person or telephonic, which I am at a loss to understand as to how that impacts the factors at issue that need to be evaluated. He wasn't doing a physical examination either case of the claimant, right? I'm sorry, Your Honor. He wasn't going to do a physical examination of the claimant. She was not. And this notion that his pain behaviors would have somehow dramatically changed the opinion as to his employability, I just can't even wrap my mind around. If he was in pain, I'm assuming that would have further impaired his ability to find employment. And if he wasn't in pain, it still doesn't change the fact that we have to look at his age, education, training, and experience. So I have no understanding of why this is a factor that the Commission is so reliant upon when addressing Ms. Helma's opinion. We do telephonic evidence before the Commission on a regular basis, whether it's telephonic depositions or it's not the first time that we've presented telephonic evidence. The second point the Commissioner references in determining whether or not Ms. Helma's opinion was persuasive is that he earns $13 an hour for the respondent employer. Again, I can't understand where under the factors what his wage earning was for the employer affects his age, education, training, and experience such that he is employable because he once earned $13 an hour. In that regard, it's our argument that this Commission decision is predicated on an erroneous legal conclusion and should be set aside. Is he reasoning that because it was such a low wage rate that there's plenty of low wage rate employment opportunities out there? I mean, I have no idea what it's saying. Is it saying that it was a low wage so he can go find another low wage? Or is it saying he could make good money? Honestly, I couldn't say because, again, there's no contrary evidence in the record to support this theory that the Commission is going on in that regard. I think the evidence is clear that the indisputable weight of the evidence compels an opposite conclusion. This Commission arbitrarily rejected Ms. Helma's opinion because she didn't do an in-person interview or because he earned $13 an hour. I'm not saying there has to be a delineation of every specific thing. No, but I think they have to perform an analysis of those factors. Ms. Helma did perform an analysis of those factors. I take great offense to the argument that somehow she didn't evaluate these things in her factual analysis, and that's why we should disregard her opinion. I mean, she lays it out in the evidence, Your Honors, where she goes through why he doesn't have access to the 1 percent of the labor market that is unskilled, sedentary work. She does address that. She talks about how he has no computer skills. She talks about his age, okay? He's 55 years old. He's a person of advanced age. That's going to – excuse me. I didn't make it up. The federal government says it. So this significantly affects the person's ability to find work, okay? So if he's already trying to access only 1 percent of the labor market, he's inhibited by his age. She talks about how he has no history of skilled work. He has no computer training. But most importantly here, this gentleman has a grade school diploma. He only completed the eighth grade. So she identifies the barriers that are keeping him from accessing that 1 percent of the labor market that makes him unskilled labor. There is no evidence in the record to rebut that. Ms. Helma's opinion that these factors prevented the claimant from accessing that stable labor market met the preponderance of the evidence standard, and the commission should have shifted that burden of production to the employer to prove that there was a stable labor market, to prove otherwise. And I'm not saying that there always has to be a contrary vocational expert opinion, okay? When you look at Schwarkow, for example, that my opponent cites too, there was not a contrary vocational expert opinion. But there was other evidence in the record that was able to contradict that opinion, such that the employer in that case had made an offer to accommodate the light-duty restrictions. So there was contrary evidence to hang your hat on that went against the vocational expert that Plaintiff entered. We don't have anything like that in the record here to show conflicting evidence on the factors that he was able to access that 1 percent of the labor market. Similarly, in the professional transportation case cited in my brief, this Court set aside a commission award of odd-lot perm total where the claimant didn't enter a vocational report, and the employer did. And this Court found that the commission award was against the manifest weight of the evidence because there was not a vocational opinion to support Plaintiff's theory that he was an odd-lot perm total. So having this vocational evidence to put forward these theories is important. We can't just argue them as attorneys. There has to be evidence in the record to support that this gentleman was employable. And that burden was not shifted to the employer to show that he did, in fact, have access to that stable labor market. And so, obviously, you're arguing procedurally for us to affirm the circuit court's decision that reversed it, correct? I am arguing that the commission decision should be reversed. Well, affirm the circuit court who reversed it. They've already reversed the commission. Correct. The circuit court was correct in reversing the commission's decision. The factors were not properly applied. There was no contrary evidence. I don't know how we could say in this case that a clear and convincing opposite conclusion isn't readily apparent, because there's no evidence to support that just because an in-person interview wasn't done and somebody earned $13 an hour, that they're obviously employable in that 1 percent of the labor market. The commission doesn't apply a manifest weight standard. We apply a manifest weight standard. The commission makes the determination of what it believes the actual facts are. And remember, the commission is the fact finder, not the arbitrator. And I think when the commission analyzes those facts, they have to apply the appropriate legal standard. They have to evaluate the factors that affect an individual's employability in this situation. And the commission decision is clear that they did not do so, and I agree that the circuit court was correct in reversing that decision. Thank you, Counsel. Counsel, you may reply. I'd like to just briefly touch on these computer skills that counsel had raised. Ms. Helmer's report states that Mr. Fink reported that he did not know anything about the computer, but that in the next sentence goes on to say that he knows how to use the computer to check the weather and send an e-mail. So this is just another inconsistency that the commission drew on, that he obviously knows how to search the web to check the weather, how to type to send an e-mail, and yet she concludes he knows nothing about a computer. So I'm not saying that he has this great knowledge about a computer, but it's just, once again, one of these inconsistencies that they found was not persuasive. I'd also like to address her argument that the commission did not analyze every factor of an odd lot and specifically cite to the English case. And in that case, the Court stated that it is presumed that the commission considers all competent and proper evidence, and the failure of them to explicitly lay out each factor will not rebut that presumption. So this isn't a case where these are elements that have to be met. They're factors. And this Court must presume that the commission, because they cite to the correct case, they cite to Ms. Helmer's report, that this Court must presume that they consider that evidence. They found the evidence not to be persuasive, and their decision is not against the manifest weight of the evidence. Thank you. Kennedy. Thank you, counsel. Thank you, counsel, both, for your arguments in this matter. This hearing is to take order by the written disposition shall issue. The Court will stand in recess subject to call.